IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIMOTHY RADKE, etc.,         )
                             )
            Plaintiff,       )
                             )
    v.                       )   No. 09 C 6828
                             )
UNIVERSITY OF ILLINOIS AT URBANA- )
CHAMPAIGN, et al.,           )
                             )
            Defendants.      )

MEMORANDUM OPINION AND ORDER

Two Chicago practitioners seek to springboard from the recent circulation-booster of the Chicago Tribune--its repeated front-page publicity and the resulting furor about the so-called "clout list" that has affected college admissions at the University of Illinois ("University")--by turning the subject of that publicity into a federal case. They have filed a putative class action, with Timothy Radke ("Radke") as the named plaintiff and the proposed class representative on behalf of this excessively-ambitious class (Complaint ¶31):

> All non-Category I applicants to the University of
> Illinois at Urbana-Champaign who, during the time
> period of 1999 until August, 2009, applied for
> admission to the University, paid an application fee to
> Defendants in consideration of admission to the
> University and were subsequently denied admission to
> the University.

Federal jurisdiction is proposed to be grounded in the Class Action Fairness Act ("Act," 28 U.S.C. §1332(d)), with a number of non-federal theories sought to be advanced under the supplemental jurisdiction auspices of 28 U.S.C. §1367 (see Complaint ¶10).

In the latter respect, it may be noted parenthetically that Radke's counsel have followed the virtually universal practice of ignoring the limited function of separate counts as set out in Fed. R. Civ. P. ("Rule") 10(b) by splintering a single claim (which is the operative concept in federal pleading) into a battery of seven "counts," each of them advancing a different theory of recovery.[1] On that score counsel would do well to read carefully and commit to practice the thoughtful and thorough explanation by Judge Easterbrook in <u>NAACP v. Am. Family Mut. Ins. Co.</u>, 978 F.2d 287, 291-93 (7th Cir. 1992).

That procedural flaw is of course curable, but the Complaint's substantive deficiencies are not. Although nothing said here should be misunderstood as sanctioning the reported admission practices at the University, any abuses flowing from those practices cannot justify counsel's overly expansive effort to squeeze such abuses into the mold prescribed by federal jurisdictional concepts.

To begin with, any such proposed class definition that is so enormous in size in relation to the number of asserted "clout" admissions is patently improper--under the Complaint's own

---

[1] Counts I through III are respectively labeled "Breach of Express Contract," "Breach of Contract Implied in Fact" and "Breach of Contract Implied in Law"; Count IV purports to sound in "Unjust Enrichment"; Count V is labeled "Common Law Fraud"; Count VI--an asserted federal claim for a change--is captioned "Denial of Due Process and Equal Protection Under 42 U.S.C. §1983"; and Count VII simply reads "Accounting."

definition the vast majority of the putative class members clearly have no standing. Complaint ¶6 alleges:

> Each year, over 20,000 high school seniors from across the nation apply to the University for approximately 7,000 available seats.

By definition, then, some two-thirds of the class as proposed by counsel would not have been admitted in any event.

That however is only the beginning of the Complaint's overly excessive reach. Although the Complaint is silent as to the real world numbers of assertedly inappropriate preferential admissions involved, it is clear that the number of such favored admissions is only a small percentage of the 7,000 annual admissions referred to in Complaint ¶6. Hence it is patently absurd to claim the boxcar figure of $5 million that the Act specifies as the "matter in controversy" required to bring the Act into play.[2]

Nor is that the only major roadblock that counsel have obviously failed to consider. Their proposal that the putative class reach back 10 years to 1999 (or for that matter even three years, for Radke was an applicant in 2006--see Complaint ¶17) by definition primarily embraces class members who are too long in the tooth for <u>current</u> admission, so that a Rule 23(b)(2) class that provides only injunctive or declaratory relief would not be

---

[2] And that is true even if the class definition's use of a ten-year time frame (available only if the Complaint's breach-of-a-written-contract theory holds up) is tenable, a matter on which this Court expresses no view.

appropriate. And as for Rule 23(b)(3), with its potential relief of damages, that provision is contraindicated by the clear predominance of individual claims over common class issues. Just think of the individualized hearings required to evaluate each applicant to determine whether he or she would or would not have been admitted on the merits--a decision that always legitimately involves subjective criteria, even when impermissible political considerations are taken out of the picture.

In sum, then, no real world invocation of federal subject matter jurisdiction on a class basis exists in the terms urged in the Complaint.[3] And the hurdles standing in the way of any due process claim (for example, what "property" interest, as contrasted with the uncertainty of acceptance, is involved?) leave the action without jurisdictional viability in that respect.

That leaves only the Count VI theory of a denial of equal protection of the laws as a possible federally-grounded contention that could keep Radke (or a class headed by Radke) in court here--and even then on a highly speculative basis.[4] And on

---

[3] If instead the rubric of conventional diversity jurisdiction were sought to be called into play, Radke's Illinois citizenship (Complaint ¶4) would disqualify him as the class representative. And that says nothing about the difficulties in establishing the over-$75,000 jurisdictional minimum in claimed damages suffered by a rejected applicant.

[4] Anyone who has had direct (or even vicarious) exposure to the uncertain world of college admissions has encountered

4

that score, though an invidious discrimination argument might pass muster (again an issue on which this Court does not opine), the Complaint provides no plausible basis (the Twombly-Iqbal standard) for a damage claim--an integral component of that theory of recovery--on Radke's part.  Given his credentials as described in Complaint ¶18, it would appear highly unlikely that his turndown by the University left him without access to a college education at some other high-quality university.

For over two decades our Court of Appeals has been teaching the lesson succinctly summarized in Wis. Knife Works v. Nat'l Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

And such cases as Wernsing v. Thompson, 423 F.3d 732, 743 (7th Cir. 2005)(internal citations and quotation marks omitted) have more recently reconfirmed that sua sponte judicial review, such as that set out in this opinion, is called for:

---

instances in which--without any untoward practices at work--a student is turned down by a supposedly "safe" school, or a student (sometimes even the same one) is struck by the lightning of acceptance by a school that would have been thought in objective terms to be out of reach.  Thus the brief summary of Radke's qualifications in Complaint ¶18 would appear to have made him a good prospect for admission to the University on the merits--but the point is that the matter is far from certain, and a court is singularly ill-suited to make the merits determination in hindsight.

5

> Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction sua sponte, they must.

Accordingly the Complaint and this action are dismissed for lack of federal subject matter jurisdiction. This dismissal is of course without prejudice to (1) a possible reassertion of Radke's equal protection claim that would fill the gap identified here or (2) a possible filing in a court of competent jurisdiction of the state law claims that are dismissed here only because they lack a federal anchor (as to either of those possibilities, no view is expressed here on the merits).

_____
Milton I. Shadur
Senior United States District Judge

Date: November 2, 2009